UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
RACHEL B.,

                      Plaintiff,

    -against-

FRANK BISIGNANO,
Commissioner of Social Security,[1]

                      Defendant.
------------------------------------------------------------------ x

**RULING AND ORDER ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

3:24-CV-322 (VDO)

**VERNON D. OLIVER**, United States District Judge:

      Plaintiff Rachel B.[2] has filed an administrative appeal under 42 U.S.C. § 405(g) against the Commissioner of Social Security ("Defendant" or "Commissioner"). She seeks to reverse the decision of the Commissioner denying her claim for Disability Insurance Benefits ("DIB"), or, in the alternative, to remand the case for a new hearing. The Commissioner has moved to affirm the decision.

      For the reasons set forth below, the Court **denies** Plaintiff's motion and **grants** Defendant's motion.

**I.**     **BACKGROUND**

      The Court assumes familiarity with Plaintiff's medical history, as summarized in both Plaintiff's Memorandum in Support of her Motion to Reverse the Commissioner's Decision

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Thus, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Frank Bisignano for Martin O'Malley in this action.

[2] Plaintiff is identified by his first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan 8, 2021).

and Defendant's Memorandum in Support of his Motion to Affirm the Commissioner's Decision. The Court adopts and incorporates both statements of fact by reference.

On November 8, 2019, Plaintiff applied for a period of DIB, alleging disability beginning on November 2, 2018.[3] After Plaintiff's claim was denied, Plaintiff then filed a written request for a hearing before an Administrative Law Judge ("ALJ") on March 28, 2022.[4] Plaintiff, her representative (Olia Yelner), and an impartial vocational expert (Michele Erbacher) participated in a telephonic hearing before an ALJ (Judge Deirdre Horton) on November 23, 2022.[5]

In December 2022, the ALJ issued a decision finding Plaintiff not to be disabled under sections 216(i) and 223(d) of the Social Security Act.[6] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work with certain limitations.[7] The Appeals Council denied Plaintiff's request for review.[8]

---

[3] Certified Administrative Record ("R.") at 276. "R." refers to the Certified Administrative Record filed at ECF No. 16. The Court cites to the pagination on the bottom right-hand corner of the record, as opposed to the CM/ECF pagination.

[4] *Id.* at 144.

[5] *Id.* at 47.

[6] *Id.* at 17–37.

[7] *Id.* at 24–25.

[8] *Id.* at 14–16.

Plaintiff filed the instant action on March 8, 2024.[9] In this action, Plaintiff seeks a closed period of DIB from November 2, 2018 to June 30, 2020.[10] Pending are the parties' cross-motions to reverse and to affirm the Commissioner's decision.[11]

## II.  LEGAL STANDARD

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

---

[9] Compl., ECF No. 1.

[10] Memo. ISO Mot. to Reverse, ECF No. 22-1 at 2.

[11] ECF Nos. 22, 25.

To be disabled, thus qualifying a claimant to benefits, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)[,]" as set forth below:

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

*Schillo*, 31 F.4th at 70. The Commissioner considers whether "the combined effect of . . . any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved to the Social Security Administration ("SSA"), "where the record includes the opinions of treating physicians, 'the Social Security Administration considers the data that [their opinions] provide [and then] draws its own conclusions as to whether those data indicate disability.'" *Schillo*, 31 F.4th at 70 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

### III. DISCUSSION

Plaintiff makes the following arguments to challenge the ALJ's decision that Plaintiff was not entitled to DIB: (1) the ALJ erred in formulating the RFC by excluding exertional

4

limitations and other limitations related to absenteeism and time-off behavior,[12] and (2) the ALJ erred in evaluating the medical opinions.[13] As discussed below, the Court determines that the administrative decision is supported by substantial evidence and must be upheld.

    **A.    Substantial Evidence Supports the ALJ's Conclusion That Plaintiff Could Perform Work at All Exertional Levels.**

        **1.    The ALJ Properly Considered Plaintiff's Impairments**

As to the RFC, Plaintiff first argues that the ALJ should have limited Plaintiff to light work due to exertional impairments, which includes a history of pain, falls, syncopal episodes, migraines, and chronic asthma exacerbation.[14] Plaintiff also asserts that the case should be remanded "so that the ALJ can include exertional limitations stemming from [Plaintiff]'s asthma, migraines, osteoarthritis and prior cancer and its treatment (which resulted in lymphedema) in her RFC description," as well as limitations related to absenteeism and time off-task.[15]

Between steps three and four, an ALJ determines "whether, despite the claimant's severe impairment, he . . . has residual functional capacity to perform his . . . past work." *Shaw v. Chater,* 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir. 1998)). The RFC "is what the claimant can still do despite the limitations imposed by his impairment." *Greek v. Colvin*, 802 F.3d 370, 374 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.945(a)(1). An ALJ makes an RFC determination "based on all the relevant

---

[12] Memo. ISO Mot. to Reverse at 26–29.

[13] *Id.* at 29–36.

[14] *Id.* at 27.

[15] *Id. at* 28–29.

evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(1), (3). The RFC, however, need not "perfectly correspond with any of the opinions of medical sources[.]" *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Id.*

"Even if there were evidence in the record supporting a more restrictive RFC, the relevant question is whether substantial evidence supports the ALJ's decision." *Langston v. Comm'r of Soc. Sec.*, No. 21-CV-00723, 2024 WL 127850, at *11 (E.D.N.Y. Jan. 11, 2024) (cleaned up). Here, a reasonable factfinder could properly arrive at the ALJ's conclusion that Plaintiff has the RFC "to perform a full range of work at all exertional levels[.]"[16] And substantial evidence supports the ALJ's findings regarding Plaintiff's limitations, including that "[s]he must avoid concentrated exposure to respiratory irritants such as dust, fumes, odors, gases, etc. as well as hazardous machinery and unprotected heights."[17]

To conclude that Plaintiff had the RFC to perform work at all exertional levels with some limitations, the ALJ considered Plaintiff's testimony and years of medical records. The ALJ acknowledged Plaintiff's testimony that she was unable to work because of shortness of breath, pain, and fatigue related to her mold exposure.[18] The ALJ also acknowledged Plaintiff's reports of getting weekly severe migraines, going blind once a week due to migraines, experiencing post-traumatic stress disorder symptoms, having problems performing tasks, and

---

[16] R. at 24–25.

[17] *Id.* at 25.

[18] *Id.*

experiencing mood swings due to ADHD and bipolar disorder.[19] However, as explained below, the ALJ reasonably found Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms to be not entirely consistent with the record.[20]

The ALJ noted that, despite Plaintiff asserting that she was unable to work for an extended period of time, Plaintiff revealed to medical providers that she was either looking for work or working.[21] With regard to Plaintiff's physical impairments, while Plaintiff reported symptoms related to her asthma and prior mold exposure, Plaintiff's treatment notes revealed a rosier picture: (1) chest x-rays taken between April 2018 and August 2019 were normal and contained no evidence of active pulmonary disease; (2) physical examinations revealed normal breath sounds and clear lungs; and (3) Plaintiff denied that she had significant respirator, neurological, or allergic complaints.[22] With regard to Plaintiff's mental impairments, the ALJ found that Plaintiff was doing fairly well with stable moods and controlled ADHD symptoms on her psychiatric medication and that Plaintiff had relatively benign mental status examination findings.[23] The ALJ thoroughly reviewed years of records, including office treatment records of Plaintiff's visit with Dr. Khan, Dr. Cohn, Dr. Salam, Dr. Lastomirsky, and an emergency room.[24] After summarizing years of records, the ALJ found Plaintiff's "positive response to treatment and the relatively benign examination findings of record are

---

[19] *Id.* at 25–30.

[20] *Id.* at 25.

[21] *Id.* at 30.

[22] *Id.* at 29.

[23] *Id.*

[24] *Id.* at 25–30.

7

inconsistent with a level of severity that would prevent her from performing a full range of work at all exertional levels with additional postural, environmental and mental limitations."[25]

The ALJ also considered the findings of consultative examiners. Notably, the ALJ was persuaded by the opinion of Barbara Coughlin, M.D., who concluded that Plaintiff had no exertional limitations but could never climb ladders, ropes, or scaffolds.[26] The ALJ found Dr. Coughlin's opinion to be supported by records showing Plaintiff's controlled asthma, normal lung functioning, clear lungs, reduced migraines, and normal gait.[27] The ALJ also noted that, unlike Dr. Coughlin, other agency consultants (Dr. Canham and Dr. Pratt) did not have the benefit of reviewing evidence provided at subsequent proceedings in providing their assessments.[28] And while the ALJ accepted the findings of the state agency consultants that Plaintiff was limited in her ability to interact with others, the ALJ also explained that Plaintiff could tolerate occasional interaction with others during the course of an eight-hour work day due to Plaintiff exhibiting stable moods and interacting with peers during her IOP support.[29]

But even if Plaintiff had succeeded in showing that substantial evidence does not exist to support the ALJ's decision, the Plaintiff has not satisfied her "duty to prove a more restrictive RFC." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (internal citations omitted). Plaintiff asserts that the case should be remanded "so that the ALJ can include exertional limitations stemming from her asthma, migraines, osteoarthritis and prior cancer

---

[25] R. at 30.

[26] *Id.* at 116–17.

[27] *Id.* at 31.

[28] *Id.*

[29] *Id.* at 33.

and its treatment (which resulted in lymphedema) in her RFC description."[30] But the ALJ considered Plaintiff's asthma in the RFC by including a limitation that Plaintiff must avoid concentrated exposure to respiratory irritants.[31] And the ALJ similarly included limitations related to Plaintiff's migraines, noting that Plaintiff's "history of migraine, and intrusive memories require that she never climb ladders, ropes or scaffolds and avoid hazards for safety reasons."[32] Regarding Plaintiff's cancer and osteoarthritis, a reasonable mind could accept that those impairments did not cause functional limitations where, as here, Plaintiff continued to work for years after being diagnosed with cancer and arthritis. Plaintiff was treated for breast cancer in 2012,[33] approximately six years before the alleged onset of her disability in November 2018, and she continued to work between 2012 and 2018.[34] Despite her history of cancer and arthritis, Plaintiff has been able to return to work.[35]

While Plaintiff argues that the ALJ should have included limitations related to time off tasks and absenteeism, the ALJ reasonably concluded that the record showed Plaintiff could perform simple, routine tasks. The ALJ considered the opinion of state agency consultant Lindsay Harvey, Ph.D., who opined that, even with Plaintiff's inability to carry out detailed tasks in a timely manner and difficulties with sustained concentration, Plaintiff could maintain concentration for two hours at a time while performing simple tasks with normal supervision.[36]

---

[30] Memo. ISO Mot. to Reverse at 29.

[31] R. at 30.

[32] *Id.* at 31.

[33] *Id.* at 2206, 2208

[34] *Id.* at 292, 343, 382.

[35] *Id.* at 19.

[36] *Id.* at 32.

The ALJ similarly considered the opinion of Russell Phillips, Ph.D., the state agency mental health consultant at the reconsideration level, who opined that Plaintiff could maintain attention for two hours at a time and persist at simple tasks over eight and forty-hour periods with normal supervision.[37]

Accordingly, because the Court cannot find that a reasonable factfinder would have to conclude otherwise, the ALJ's RFC determination is supported by substantial evidence. *Brault v. Soc. Sec. Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).

### 2. The ALJ Properly Considered the Medical Opinion Evidence

Finally, Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence.

For claims filed on or after March 27, 2017, as here, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Instead, the ALJ will consider a medical opinion and any prior medical finding by evaluating the following factors: (1) supportability; (2) consistency; (3) the medical professional's relationship with the claimant, including: (i) the length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) the medical professional's specialization; and (5) other factors, including, but not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the SSA disability program's policies and evidentiary requirements. *Id.* § 416.920c(c). "[W]hen 'evaluating the persuasiveness of

---

[37] *Id.* at 32.

medical opinions and prior administrative medical findings,' the 'most important factors . . . are supportability . . . and consistency.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 at *1 (2d Cir. June 17, 2022) (quoting 20 C.F.R § 404.1520c(a)). Therefore, the ALJ must "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision." *Id.* § 404.1520c(b)(2). "The ALJ may also, but is not required to, explain the third, fourth, and fifth factors[,]" which include the medical professional's relationship with the claimant, the medical professional's specialization, and other evidence. *Ashleigh L. v. Kijakazi*, No. 3:22-CV-675 (SVN), 2023 WL 6357000, at *7 (D. Conn. Sept. 29, 2023) (citing 20 C.F.R § 416.920c(b)(2)).

After careful consideration of the record, the Court finds that the ALJ's decision includes a proper evaluation of the medical opinions at issue. The ALJ properly explained the weighing of supportability and consistency in reaching the conclusions. First, to illustrate, the ALJ reasonably weighed the opinion of Dr. Coughlin by finding it to be "mostly persuasive and more persuasive than the overall findings of Dr. Canham and Dr. Pratt."[38] The ALJ found that Dr. Coughlin's opinion was supported by evidence showing Plaintiff's "controlled asthma on her medication regimen, normal lung functioning, clear lungs, reduced migraines, and normal gait."[39] As to consistency, the ALJ found Dr. Coughlin's opinion was "consistent with the other evidence of record, including evidence provided at the hearing level."[40]

---

[38] *Id.* at 31.

[39] *Id.*

[40] *Id.*

Second, the ALJ reasonably weighed the opinion of Richard Brewer, M.D. by finding it to be "minimally persuasive."[41] Regarding supportability, while Dr. Brewer cited to his treating history with Plaintiff and her history of asthma, allergic rhinitis and migraines in support of his findings, the ALJ found that "the overall evidence of record did not support that the claimant is as limited as Dr. Brewer purported."[42] Regarding consistency, the ALJ noted the contrast between Dr. Brewer's opinion and Plaintiff's longitudinal record, the latter of which documents "her normal respirations, normal ranges of motion, intact extremity sensations, normal coordination, normal gait, relatively benign mental status examination findings."[43] The ALJ also found that Plaintiff's asthma medications helped control her symptoms and that Plaintiff only needed to use her Albuterol inhaler as needed.[44]

Likewise, the ALJ reasonably weighed the opinion of Tasneem Khan, M.D., finding it to be "minimally persuasive."[45] Dr. Khan treated Plaintiff's mental health for years on a monthly basis.[46] Regarding supportability, the ALJ found that Dr. Khan's treatment notes do not support that Plaintiff is as limited as he purported and, instead, consistently document that Plaintiff was doing "fairly well" with stable moods and controlled ADHD symptoms on her

---

[41] *Id.* at 32.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.* at 34.

[46] *Id.*

psychiatric medication regiment.[47] Regarding consistency, the ALJ found Dr. Khan's overall opinion to be "inconsistent with her longitudinal treatment record."[48]

Accordingly, because the ALJ weighed each opinion by explaining what was or was not "supported" by the record or "consistent" with other evidence, the ALJ reasonably weighed the medical opinion evidence. The deferential standard of review, substantial evidence, prevents this Court from reweighing the evidence and thus, the ALJ did not commit reversible error.

## IV.  CONCLUSION

For these reasons, the Court **grants** the Commissioner's motion to affirm (ECF No. 25) and **denies** Plaintiff's motion to reverse or remand the Commissioner's decision (ECF No. 22). The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Hartford, Connecticut
September 8, 2025

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

---

[47] *Id.*

[48] *Id.*